# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CIMARRON LUMBER AND SUPPLY COMPANY, a general partnership, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 12-2240-JAR ) |
| MCLINEY LUMBER AND SUPPLY, LLC; SUTHERLAND BUILDING MATERIAL CENTERS, L.P.; SUTHERLANDS WEST TEXAS, INC.; and SUTHERLAND CENTENNIAL LUMBER CO., LLC, | ) ) ) ) ) ) |
| Defendants. | ) |
| JANE SUTHERLAND MCLINEY; MCLINEY LUMBER AND SUPPLY, LLC; SUTHERLAND BUILDING MATERIAL CENTERS, L.P.; SUTHERLANDS WEST TEXAS, INC.; and SUTHERLAND CENTENNIAL LUMBER CO., LLC, | ) ) ) ) ) ) ) |
| Counterclaim Plaintiffs, | ) |
| vs. | ) ) |
| CIMARRON LUMBER AND SUPPLY COMPANY; ARKANSAS POST AND POLE COMPANY; SUTHERLAND BUILDING PRODUCTS, INC.; DARDANELLE TIMBER CO., INC.; and OSAGE DOOR CO., INC., | ) ) ) ) ) |
| Counterclaim Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Dismiss the Counterclaims and, Alternatively, For a More Definite Statement (Doc. 15). Plaintiff/Counterclaim Defendant's

motion sets forth the following arguments: 1) Jane McLiney should be dismissed as a counterclaim plaintiff pursuant to Fed. R. Civ. P. 12(b)(1) because she lacks standing to sue; 2) Counts I-IV of the Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the Counterclaim Plaintiffs' standing is deficient in that it is rooted in McLiney, who herself lacks standing; 3) Counterclaim Plaintiffs' fraud-based affirmative defenses and counterclaims should be dismissed pursuant to Fed. R. Civ. P. 9(b) for failure to plead fraud with sufficient particularity; 4) Counterclaim Plaintiffs' conversion counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the claim is not recognized under Kansas law, and, alternatively, a more definite statement should be ordered as to Count I of the Counterclaim to the extent another cause of action is purportedly asserted. The matter has been fully briefed and the Court is prepared to rule. As described more fully below, Plaintiff's motion is denied.

**I.      Background**

Plaintiff Cimarron Lumber and Supply Company ("Cimarron") filed its Complaint alleging that Defendants McLiney Lumber and Supply, LLC, Sutherland Building Material Centers, L.P., Sutherlands West Texas, Inc., and Sutherland Centennial Lumber Co., LLC (collectively "Defendants") have infringed various trademark rights of Cimarron.[1] Defendants' initial Answer and Counterclaim added Jane McLiney ("McLiney") as a counterclaim plaintiff. Cimarron stipulated to allowing McLiney and Defendants (collectively "Counterclaim Plaintiffs") an opportunity to amend their pleadings.[2] Counterclaim Plaintiffs filed their Amended Answer and Amended Counterclaim, adding additional allegations and additional

---

[1]Doc. 1.

[2]Doc. 11.

counterclaim defendants.³ Cimarron states that the additional counterclaim defendants are partners of Cimarron and that they all join in Cimarron's motion to dismiss.⁴

## II. Standing

### A. Legal Standard

Standing is analyzed under Fed. R. Civ. P. 12(b)(1) because a party's standing implicates subject matter jurisdiction.⁵ The Court must accept the well-plead allegations of a complaint when analyzing facial challenges to the existence of subject matter jurisdiction pursuant to Rule 12(b)(1).⁶ To demonstrate standing, a plaintiff must show that they "personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'"⁷

### B. McLiney's Standing

Cimarron argues that McLiney does not have standing because shareholders lack standing to redress an injury to the corporation, and because in the context of the Lanham Act a plaintiff must be a competitor of the defendant and allege a competitive injury to establish standing. Although Defendants are competitors, Cimarron argues that McLiney is not a present competitor in her individual capacity. Cimarron alleges that McLiney has failed to assert that

---

³Doc. 13.

⁴Doc. 16 at n.1.

⁵*See Amco Ins. Co. v. Mark's Custom Signs, Inc.*, No. 12-cv-2065-CM, 2012 WL 1721896, at *1 (D. Kan. May 16, 2012).

⁶*Id.*

⁷*Valley Forge Christian Coll. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (citations omitted).

3

she personally competes with Cimarron, but rather alleges that "her family *has opened*, [and] *owned*" Sutherland lumber stores and that she and "her family *have participated* in various Sutherland entities in the lumber or home improvement business."[8] Cimarron argues that these pleadings fail to show that McLiney personally and presently operates a competitive business enterprise as a sole proprietorship.

The Tenth Circuit has distinguished the standing inquiry between claims of false association under 15 U.S.C. § 1125(a)(1)(A) and false advertising under § 1125(a)(1)(B).[9] A false association claim "does not require an allegation of competitive injury," and those with standing for false association claims "include parties with a commercial interest in the product wrongfully identified with another's mark, . . . or with a commercial interest in the misused mark."[10] In *Stanfield*, the Tenth Circuit held that plaintiff had no reasonable interest to be protected under the Lanham Act even though plaintiff argued that he had plans to compete with the defendant. The court held that "the mere potential of commercial interest in one's family name is insufficient to confer standing."[11] The court based this ruling on the fact that plaintiff had abandoned any rights he may have had in the trademark at issue.[12] The Counterclaim Plaintiffs allege that they have not abandoned their rights in the instant case.

---

[8]Doc. 13 at 18–19 (emphasis added).

[9]*See Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 410 (6th Cir. 2012) (noting the split and the narrower approaches adopted by the Seventh, Ninth and Tenth Circuits).

[10]*Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 872–73 (10th Cir. 1995), *cert. denied*, 516 U.S. 920, 116 S. Ct. 314 (1995).

[11]*Id.* at 873.

[12]*Id.* (citing *Georgia Carpet Sales, Inc. v. SLS Corp.*, 789 F. Supp. 244, 246 (N.D. Ill. 1992) ("[A]ny claim under Section 1125(a) for the asserted infringement of any trade name that has been the subject matter of a naked license" is "doom[ed].").

Count V of the Amended Counterclaim seeks to cancel or revise the registered Sutherlands marks.[13] The court in *Triple-I Corp. v. Hudson Assocs. Consulting, Inc.*, held that:

> [A] petition to cancel a registration of a mark may be filed by any person "who believes that he is or will be damaged by the registration of the mark." "The party seeking cancellation must prove two elements: (1) that it has standing; and (2) that there are valid grounds for cancelling the registration." . . . "Standing is the more liberal of the two elements and requires only that the party seeking cancellation believe that it is likely to be damaged by the registration." . . . "[T]here is no requirement that damage be proved in order to establish standing or to prevail in a cancellation proceeding." . . . "Standing requires only that the petitioner have a 'real interest' in the cancellation proceedings."[14]

Cimarron alleges that the corporate entities are infringing its registered marks and they, in turn, counterclaimed and assert rights in the marks equal or superior to Cimarron's.[15] Cimarron's contention that its filing of trademark infringement and unfair competition claims against the corporate entities is insufficient to confer standing on a party who claims equal or superior rights in the marks at issue must be rejected.[16] The fact that McLiney was not named as a defendant should not be dispositive. The court in *Triple-I* held that the plaintiff's belief that it would be damaged due to the threat of trademark infringement litigation was sufficient to assert a "real interest."[17] The purpose of the standing requirement is to prevent "litigation where there is no real controversy between the parties, where a plaintiff, petitioner or opposer, is no more

---

[13]Doc. 13 at 26.

[14]*Triple-I Corp. v. Hudson Assocs. Consulting, Inc.*, No. 06-2195-EFM, 2009 WL 2162513, *3 (D. Kan. July 17, 2009) (footnotes and citations omitted).

[15]*Compare, e.g.,* Complaint (Doc. 1) at ¶¶ 38-45 with Amended Counterclaim (Doc. 13) at ¶¶ 23-32.

[16]*See ESPN v. Quicksilver, Inc.*, 586 F. Supp. 2d 219, 231 (S.D.N.Y. 2008) (rejecting standing challenge to bring counterclaim when plaintiff's own complaint alleges infringement against defendant/counterclaim plaintiff).

[17]*Triple-I*, 2009 WL 2162513 at *4.

than an intermeddler."[18]  Clearly that is not the case in the instant action.

## C. Defendants' Standing

Cimarron argues that because Defendants' standing is expressly rooted in McLiney, Defendants lack standing to assert any of their stated counterclaims in Counts I-IV. Cimarron argues that Defendants' purported rights derive solely from McLiney, citing Counterclaim Plaintiffs' assertion that "McLiney and her family have participated in various Sutherland entities in the lumber or home improvement business and made full use of the SUTHERLANDS marks. It is through her that the Jane Sutherland McLiney entities are entitled to use the SUTHERLANDS name and marks."[19]  This allegation does not state that individual family members own trademark rights, but rather simply identifies the prerequisite to using the marks, *i.e.,* one must be a Sutherland family member to open retail lumber stores that use the marks. Cimarron's argument that McLiney lacks standing because she is not the business entity and that the Defendant business entities lack standing because they rely on the individual (McLiney) for their right to use the marks, would render the Counterclaim Plaintiffs without recourse. In any event, the Court has rejected Cimarron's argument that McLiney lacks standing. Furthermore, the "contention that its filing of trademark infringement claims against [defendants] is insufficient to confer standing on a party who claims to be the senior user of the mark is simply silly."[20]

## III. Motion to Dismiss

---

[18]*Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029–30 (C.C.P.A. 1982).

[19]Doc. 13 at 19, ¶15.

[20]*ESPN*, 586 F. Supp. 2d at 231.

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[21] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[22] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[23] but requires more than "a sheer possibility."[24]

The plausibility standard enunciated in *Bell Atlantic v. Twombly*, seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[25] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27]

The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not

---

[21]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[22]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[23]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[24]*Id.*

[25]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[26]*Id.* (citing *Twombly*, 550 U.S. at 556).

[27]*Iqbal*, 556 U.S. at 678.

just speculatively) has a claim for relief.[28] As the Supreme Court explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[29] Additionally, the facts narrated by the plaintiff must at least outline or adumbrate a viable claim in order to "pass Rule 12(b)(6) muster."[30]

## IV. Fraud-Based Claims

Cimarron alleges that Counterclaim Plaintiffs' pleadings pertaining to the fraud-based affirmative defenses and Count V of the Amended Counterclaim fail to meet the particularized pleading requirements of Fed. R. Civ. P. 9(b). Count V of the Amended Counterclaim seeks cancellation of the registrations at issue due to Cimarron's alleged fraudulent nondisclosure to the United States Patent and Trademark Office of Counterclaim Plaintiffs' use and ownership of the marks. Counterclaim Plaintiffs may petition to cancel a registered service mark on the grounds that the registration was obtained fraudulently.[31]

Fraud in the procurement must be alleged with specificity as required by Rule 9(b), and the pleader must "state[ ] with sufficient specificity the factual bases for its allegation."[32] These claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires

---

[28]*Robbins,* 519 F.3d at 1247–48. "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* (internal citations omitted).

[29]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

[30]*Helm v. Kansas*, No. 08-2459-JAR, 2009 WL 2168886, at *2 (D. Kan. July 21, 2009) (quoting *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996)).

[31]*See* 15 U.S.C. § 1064.

[32]*San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir. 1988) (citations omitted).

allegations of fraud to be "state[d] with particularity."³³ Rule 9(b) requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."³⁴ The complaint must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."³⁵

To prove that Cimarron committed fraud in the procurement of its federal trademark, Counterclaim Plaintiffs must plead and prove:

> (1) the false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance.³⁶

"The 'oath' an applicant signs requires only that the declarant state 'to the best of *his knowledge and belief* no other person, firm, corporation, or association has the right to use said mark in commerce.'"³⁷ In determining whether this statement was fraudulent, the focus must be on the "declarant's subjective, 'honestly held, good faith' belief."³⁸ Counterclaim Plaintiffs have the burden of proving that the individual signed the oath on Cimarron's behalf knowing

---

³³*See United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir.2010).

³⁴ Fed. R. Civ. P. 9(b).

³⁵*Heavy Petroleum Partners, LLC v. Atkins*, 457 F. App'x. 735, 742–43 (10th Cir. 2012) (citing *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir.1997) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)).

³⁶*Id.* at 473 (citation omitted).

³⁷*Id.* at 472 (citation omitted).

³⁸*United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1227 (10th Cir. 2000) (citation omitted).

Counterclaim Plaintiffs had the right to use the mark in commerce.[39] At trial, the signer's self-serving testimony that they believed Cimarron owned the mark will not be dispositive, and the trier of fact will be free to make its own credibility determination.[40]

Count V alleges that the Counterclaim Plaintiffs:

> have ownership rights to use of the SUTHERLAND marks, which are at odds to the representations that were made, without notice to the Jane Sutherland McLineys, to the United States Trademark Office. . . . If the representations had been accurate, the USPTO would not have or should not have issued registrations to the exclusion of the Jane Sutherland McLineys:
> a. Registered mark 1,823,940 for SUTHERLANDS CENTRAL,
> b. Registered mark 2,501,549 for SUTHERLANDS EXPRESS,
> c. Registered mark 3,635,248 for SUTHERLANDS,
> d. Registered mark 3,638,652 for SUTHERLANDS PRO, and
> e. Registered mark 4,179,703 for SUTHERLANDS PRO.[41]

Count V continues by alleging that:

> The representations were fraudulently *or alternatively, negligently* made. For example, an unknown individual acting on behalf of Cimarron and at the direction of one or more General Partners caused an attorney, Lawrence A. Swain to swear on or about at 5:29 p.m. on November 13, 2008 that Cimarron was the owner of the SUTHERLANDS mark and to the best of his knowledge and belief "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive" and that all other statements in the application were true. A similar representation was made on the application of each of the above

---

[39]*Id*. (citation omitted).

[40]*Id.* (stating that plaintiff was not required to pry an admission out of defendant's representatives on the stand in order to meet its burden of proof) (citing *Global Maschinen GmbH v. Global Banking Sys., Inc.*, 227 U.S.P.Q. 862, 867 (TTAB 1985) ("That the record contains no direct evidence of respondent's intent does not mitigate the fraud nor preclude us from holding that respondent's conduct was fraudulent.")).

[41]Doc. 13 at 27, ¶¶ 61-62.

registered marks.⁴²

The Court finds that Counterclaim Plaintiffs' allegations sufficiently set forth the time, place and contents of the false representation, the identity of the party making the false statements and the resulting consequences. They specifically set forth the registrations at issue, the person signing on behalf of Cimarron and the date and time of the representation. Their failure to name the other individual involved is not fatal. The identity of that person is exclusively within Cimarron's knowledge and will require the benefits of discovery.

Cimarron argues that Counterclaim Plaintiffs' use of the word "negligence" warrants dismissal of their fraud claim. However, Counterclaim Plaintiffs did allege that Cimarron was "aware" of their use of the marks in question. Counterclaim Plaintiffs allege that "[g]iven the number of years and its dealings with the Jane Sutherland McLineys, Cimarron was aware that the Jane Sutherland McLineys were using the marks in connection with the lumber, hardware and retail business at the time the federal application was signed by Lawrence A. Swain."⁴³ They go on to allege that "Cimarron had no reasonable basis" to assert ownership rights in the marks to the exclusion of Counterclaim Plaintiffs "or did so *negligently*. Cimarron and its General Partners and [sic] failed to disclose this knowledge with the intent to obtain a registration to which it was not entitled to alone. Cimarron and its General Partners deliberately *or negligently* failed to disclose this to the USPTO."⁴⁴

Rule 9(b) specifically states that "[m]alice, intent, knowledge, and other conditions of a

---

⁴²*Id.* at 27–28, ¶ 63 (emphasis added).

⁴³*Id*. at 28, ¶ 64.

⁴⁴*Id.* at 28, ¶ 65 (emphasis added).

11

person's mid may be alleged generally."[45] Counterclaim Plaintiffs' pleadings allege sufficient underlying facts from which a court may reasonably infer that Cimarron acted with the requisite state of mind. Despite Counterclaim Plaintiffs' unfortunate use of the word "negligence," such wording is not fatal because the underlying factual allegations support their allegation that Cimarron was "aware" of its misrepresentation on the application.[46] In *CTF Development, Inc. v. Penta Hospitality, LLC*, the court held that:

> Finally, plaintiff cites several decisions to support the proposition that there must be subjective intent to deceive, rather than evidence of mere negligence in failing to disclose certain evidence (Br. 4, 6). This order does not dispute plaintiff's proposition. But plaintiff wrongly assumes that Hospitality has only alleged facts that show mere negligence. By way of example, the cases cited by plaintiff address situations where certain facts were accidentally *omitted* from a statement of use—a circumstance of arguable negligence in which an inference of an intent to deceive does not naturally follow. In contrast, when allegedly false facts are *affirmatively added* to the statement of use, this order cannot say that an intent to deceive the USPTO is not a plausible inference. As that is all that is required to survive a motion to dismiss, the intent prong is sufficiently alleged.[47]

The Court acknowledges that Counterclaim Plaintiffs will have a heavy burden of proving knowledge, however the Court cannot conclude, at this juncture, that their allegations are insufficient to withstand Cimarron's motion to dismiss.[48] In *Southco, Inc. v. Penn Eng'g &*

---

[45] Fed. R. Civ. P. 9(b).

[46] *See Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, Nos. 05-3227, 05-5623, 06-3735 (NLH), 2007 WL 2892680, *4 (D. N.J. Sept. 28, 2007) ("This failure to adequately plead scienter could have been fatal to C & B's fraud claim had it not stated in paragraph 60 of the body of its answer to the second amended complaint that ACA knew or reasonably should have known that its misrepresentations were false.").

[47] *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. C-09-02429 WHA, 2009 WL 3517617, *6 (N.D. Cal. Oct. 26, 2009).

[48] *United Phosphorus*, 205 F.3d at 1227 (noting that the clear and convincing burden of proof is a heavy one).

*Mfg. Corp.*, the movant contended that allegations were insufficient to show that its president should have been put on notice of the counterclaimants' allegedly infringing product.[49] The court noted that "[a]t this juncture, however, the Court must take the allegations as true and, therefore, the Court concludes that [counterclaimants] have sufficiently plead material misrepresentations for purposes of stating a claim of fraud on the PTO in procurement of a trademark."[50] Such is the case here.

## IV. Conversion Claim

Cimarron argues that Count I of the Amended Counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because conversion of a trademark is not a recognized claim under Kansas law. Count I is titled "Unfair Competition," and contains the following paragraph:

> 28. Cimarron and the General Partners have infringed, converted and unfairly competed by attempting to arrogate ownership of this jointly owned property to itself at the exclusion of the Jane Sutherland McLineys. The General Partners have caused Cimarron to claim exclusive ownership in the marks when it either does not have an ownership interest or does not have exclusive ownership in the marks at issue.[51]

The Counterclaim Plaintiffs' use of the word "convert" does not render Count I a conversion claim, and in fact Counterclaim Plaintiffs have acknowledged that they do not assert a conversion claim.[52]

---

[49] *Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 725 (D. Del. 2011).

[50] *Id.*

[51] Doc. 13 at 22.

[52] Doc. 27 at 14.

13

Cimarron argues in the alternative, that to the extent another cause of action is purportedly asserted, it is too vague for Cimarron to frame a responsive pleading. Therefore, Cimarron moves in the alternative for a more definite statement under Fed. R. Civ. P. 12(e). Under the rule, a more definite statement may be appropriate when "a pleading to which a responsive pleading is allowed . . . is so vague or ambiguous that the party cannot reasonably prepare a response."[53] A motion for a more definite statement should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission.[54] Additional details with respect to the claims should be elicited through the discovery process.[55] The decision whether to grant or deny such a motion lies within the sound discretion of the court.[56] Due to the minimal pleading requirements of the Federal Rules, Rule 12(e) motions are generally disfavored by courts and are properly granted only when a party is unable to determine the issues to which a response is required.[57] Rule 12(e) is designed to strike at unintelligible pleadings rather than pleadings that lack detail.[58]

Count I sets forth a claim for unfair competition under the Lanham Act and under Kansas state law. The Court has reviewed Count I and finds that it plausibly sets forth a claim for unfair

---

[53] Fed. R. Civ. P. 12(e).

[54] *Householder v. Cedars, Inc.*, No. 08-2463-KHV-GLR, 2008 WL 4974785, at *1 (D. Kan. Nov. 19, 2008) (citation omitted).

[55] *Id.* (citation omitted).

[56] *Id.* (citation omitted).

[57] *Id.* (citation omitted).

[58] *Ewing v. Direct Sec. Servs.*, No. 07-2299-CM-DJW, 2008 WL 906297, at *1 (D. Kan. Apr. 2, 2008) (citation omitted).

competition, such that Cimarron should be able to craft answers that either admit or deny the allegations and to state any affirmative defense that may apply. It is clear from the motion that Cimarron is armed with sufficient information to respond to Count I of the Amended Counterclaim and that instead of clarification, it seeks details that are properly elicited through the discovery process. Accordingly, the motion for a more definite statement is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss the Counterclaims and, Alternatively, For a More Definite Statement (Doc. 15) is **DENIED.**

**IT IS SO ORDERED**.

Dated: March 29, 2013

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE